IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs February 25, 2020

## STATE OF TENNESSEE v. KURT DOUGLAS BROWN

**Appeal from the Criminal Court for Campbell County
No. 17164      E. Shayne Sexton, Judge**

_____

### No. E2019-01068-CCA-R3-CD

_____

The Defendant, Kurt Douglas Brown, was convicted by a Campbell County Criminal Court jury of unlawful possession of a firearm by a convicted felon, a Class C felony. *See* T.C.A. § 39-17-1307 (2014) (subsequently amended). The trial court sentenced the Defendant as a Range II offender to eight years' confinement. On appeal, the Defendant contends that the trial court erred (1) by admitting as evidence the 9-1-1 recording and his previous voluntary manslaughter conviction and (2) by determining that his previous aggravated assault conviction was a crime of violence. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

Corbin H. Payne (on appeal), Knoxville, Tennessee; and Jeffrey C. Coller and William Evans (at trial), Jacksboro, Tennessee, for the appellant, Kurt Douglas Brown.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Senior Assistant Attorney General; Jared R. Effler, District Attorney General; and Lindsey Cadle and Courtney Stanifer, Assistant District Attorneys General, for the appellee, State of Tennessee.

### OPINION

This case relates to the November 18, 2015 shooting incident, in which the Defendant shot at a SUV occupied by three people. The Defendant was indicted for three counts of reckless endangerment, two counts of false reporting, tampering with evidence, unlawful possession of a firearm by a convicted felon, and vandalism valued at $500 or

less. The firearm charge was severed from the remaining counts and tried before a jury on April 10, 2018. This appeal is limited to the Defendant's firearm conviction.

At the trial, the recording of the 9-1-1 call was played for the jury. The parties do not dispute that the call was placed by the Defendant, who reported that someone had fired a gun at him and had driven away.

Cole Hembree testified that on November 18, 2015, he lived in his parents' home and that the Defendant lived nearby. Mr. Hembree recalled previously speaking to the Defendant, who had been friendly. Mr. Hembree said that on November 18, sometime between 12:00 a.m. and 2:00 a.m., he was with his friends, "Preston" and "Ryan." Mr. Hembree said that Preston drove a Toyota 4Runner SUV, that Mr. Hembree sat in the front passenger seat, and that Ryan sat in the backseat on the passenger side. Mr. Hembree said that Preston reduced his speed as the SUV approached a stop sign in front of the Defendant's home and that Preston looked down to connect a cell phone to a charger. Mr. Hembree stated that when the SUV had almost reached the stop sign, he saw the Defendant leave the Defendant's home, that the Defendant looked angry, and that the Defendant had "something" in his hand. Mr. Hembree thought that the Defendant held a small caliber handgun and said that the Defendant extended his armed. Mr. Hembree told Preston to drive away. Mr. Hembree said that, as the car drove away, he heard "a ding off the side of the [SUV]."

Jacksboro Police Officer Franklin Ayers testified that, at the time of the incident, he was a Campbell County Sheriff's Deputy and that he responded to the Defendant's home with Deputy Cody Douglas. The Defendant reported that Duke Chambers and Trevor Lane shot at the Defendant's home, and Officer Ayers investigated the allegation. During his investigation, Officer Ayers was asked to speak with Mr. Hembree and his friends at the LaFollette Police Department. Officer Ayers took a photograph of the SUV, which was received as an exhibit and which showed what Officer Ayers described as a "gunshot graze" on the rear passenger-side door. Officer Ayers returned to the Defendant's home, at which time he saw a .45-caliber cartridge casing on the front porch. The Defendant reported that he thought someone was "messing around" with his vehicles, that he thought he was going to be hurt, and that he fired an air pellet gun at the SUV outside his home. The Defendant permitted the deputies inside the home to examine the air pellet gun, and, when inside the home, the deputies saw a .22-caliber rifle and a loaded .45-caliber handgun. The handgun was found inside a trash can. The Defendant stated that he hid the handgun after he fired it at the SUV. Officer Ayers said that he did not find evidence showing that anyone had left the SUV, that the SUV had been on the Defendant's property, and that anyone had fired a shot at the Defendant's home. The Defendant lived alone at the home, and the Defendant admitted to the officers that he had a previous felony conviction.

A judgment of conviction was received as an exhibit and showed that, on March 24, 2014, the Defendant was convicted of "§ 39-13-102 – RECKLESS AGGRVATED ASSAULT," a Class D felony, and received a two-year sentence.

Campbell County Sherriff's Investigator James Skeans testified that he responded to the Defendant's home and saw a cartridge casing on the front porch. The Defendant initially denied having a handgun that could fire the type of cartridge casing found on the porch and claimed he fired an air pellet gun at a SUV. However, the Defendant later admitted firing a .45-caliber handgun and directed the deputies to the handgun's location inside the home. Although the Defendant expressed having been afraid for his safety to Officer Ayers, the Defendant did not express fear to Investigator Skeans. The Defendant acknowledged that he was a convicted felon and that he was not permitted to possess a firearm. The Defendant reported that his dog began barking, that he went outside to investigate, and that he saw the SUV at the stop sign. When Investigator Skeans was permitted to review a transcript of the Defendant's police interview, Investigator Skeans agreed that the Defendant had stated he "was scared for his life."

Paul Baxter testified for the defense that he had lived next door to the Defendant for about eight years. Mr. Baxter was aware of "six or eight" times the Defendant's home had been burglarized. During the first incident, the front door of the Defendant's home had been "kicked in" and broken, and the stolen items had been valued at "several hundred dollars." Mr. Baxter said that the Defendant's home had been burglarized four or five times during the year before the shooting. Mr. Baxter had never seen the Defendant fire any guns.

Upon this evidence, the jury found the Defendant guilty of unlawful possession of a firearm by a convicted felon. This appeal followed.

## I.      9-1-1 Recording and the Defendant's Voluntary Manslaughter Conviction

The Defendant contends that the trial court erred by admitting as evidence the recording of the 9-1-1 call and his previous manslaughter conviction, both of which he alleges prejudiced his defense. The State responds that the trial court did not abuse its discretion.

## A.    9-1-1 Recording

Before the firearm charge was severed from the remaining indictment counts, the Defendant filed a pretrial motion to prohibit the State from introducing as evidence the recording of the 9-1-1 call. According to the parties at the motion hearing, the Defendant stated in the recording that a person had fired a gun at him and that the person had driven away. The Defendant argued that this statement, along with his police statement in which

he initially said he fired an air pellet gun, showed that he provided inconsistent statements. He argued that his statement in the recording was not relevant. The State argued that the Defendant's statement in the 9-1-1 recording, along with his police statement, was relevant to the false reporting charges. The discussion that followed with the trial court focused solely on the false report allegations, not the firearm charge at issue in this appeal. The trial court denied the Defendant's motion after it determined that the recording involved the Defendant's statement regarding the incident and was relevant to show how the investigation began.

Evidence is relevant and generally admissible when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401, 402. Questions regarding the admissibility and relevance of evidence generally lie within the discretion of the trial court, and the appellate courts will not "interfere with the exercise of that discretion unless a clear abuse appears on the face of the record." *State v. Franklin*, 308 S.W.3d 799, 809 (Tenn. 2010) (citing *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007)).

A trial court abuses its discretion when it applies an incorrect legal standard or reaches a conclusion that is "illogical or unreasonable and causes an injustice to the party complaining." *State v. Ruiz*, 204 S.W.3d 772, 778 (Tenn. 2006). Relevant evidence, however, "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Tenn. R. Evid. 403.

The recording was relevant to show that this case originated, at least in part, when the police initiated an investigation into the Defendant's report that someone had fired a gun at his home. It was during this investigation that the officers discovered that the Defendant possessed a .45-caliber handgun and that he was a convicted felon. The Defendant's statements in the 9-1-1 call were not offered as substantive evidence of whether the Defendant possessed a firearm unlawfully. The trial court did not abuse its discretion by admitting the recording as relevant evidence of why the police responded to the Defendant's home. The Defendant is not entitled to relief on this basis.

## B. Voluntary Manslaughter

The record reflects that the Defendant told the investigating officers that he had been convicted of voluntary manslaughter. Before the trial, the Defendant sought to prohibit the State from presenting this evidence at the trial, and the trial court determined that the Defendant's statement was outweighed by its prejudicial effect. Therefore, the

portion of the Defendant's police statement, in which he identified his previous conviction for voluntary manslaughter, was excluded from evidence at the trial.

The original indictment in this case alleged that the previous felony for which the Defendant had been convicted was "reckless aggravated assault" and that this offense involved the use or attempted use of force, violence, or a deadly weapon. Before the trial, the State sought to amend the indictment count to reflect that the firearm violation was a Class C felony, not a Class E felony. The parties agreed to amend the indictment to correct the felony classification to a Class C felony. The record, likewise, reflects that the parties stipulated to the Defendant's "prior felony conviction" and that the previous conviction involved the use or attempted use of force, violence, or a deadly weapon.

However, the State subsequently sought to amend the indictment to remove the reference to "reckless aggravated assault" as the underlying felony conviction to support the unlawful firearm possession charge. The State wanted to proceed on the previous voluntary manslaughter conviction to support the firearm charge. The Defendant opposed the amendment and alleged that although "reckless aggravated assault" was not a crime of violence to support the firearm charge, the State was precluded from presenting evidence of any additional felony conviction, including the voluntary manslaughter conviction, because the indictment identified "reckless aggravated assault" as the underlying felony conviction.

The trial court determined that all of the previous agreements regarding amendments to the indictment were "off the table" and that the trial would proceed based upon the language in the original indictment that referred to the "reckless aggravated assault" as the underlying previous felony conviction as a crime involving violence. The court determined that "reckless aggravated assault" was a crime involving the "use of force or attempted use per the [statutory] definition." The court likewise determined that the previous conviction would elevate the firearm violation to a Class C felony. The court ordered that the indictment be amended to reflect "the simple language of the statute, that he suffered from. That way, we don't have to get into the manslaughter, we don't get into anything." The court stated that the indictment would reflect "after having been convicted of a felony involving the use or attempted use of force, violence, or deadly weapon," with "no to-wit."

However, during jury selection, the jurors learned that the Defendant had been convicted of voluntary manslaughter. During voir dire, the prosecutor told the jurors that the Defendant's previous felony conviction that formed the basis of the firearm violation charge was voluntary manslaughter. The Defendant objected on the basis that "[w]e're going back to the beginning of objecting to firing at someone and --." The trial court interjected and overruled the objection to "permit some background." The court provided an instruction as follows:

-5-

I'm gonna give you an instruction numerous times that what the lawyers say is not evidence. They are explaining their positions in Court, whether they're explaining evidence or making general argument. And this is primarily a question and answer session. So, what you hear is not evidence. It's only meant to elicit responses from you. Don't take it as evidence, all right?

During an exchange with a potential juror, the juror stated that if a person had been convicted of a crime and had served a sentence, the person should not be punished for the rest of the person's life. The prosecutor asked if the juror's position would change if the person had been convicted of voluntary manslaughter. The juror said that she would want to know the circumstances underlying the conviction. A similar exchange occurred between another potential juror, and the prosecutor referred to the underlying felony conviction as voluntary manslaughter five additional times, without additional objections from the Defendant.

In a jury out hearing during the State's case-in-chief, the prosecutor told the trial court that the State was prepared to present evidence of the Defendant's previous voluntary manslaughter conviction. The trial court again determined that the grand jury returned an indictment on the basis that "reckless aggravated assault" was the underlying felony conviction and noted that the Defendant would not consent to amending the indictment to identify the previous felony conviction as voluntary manslaughter. The court concluded that although the voluntary manslaughter conviction had been referenced during jury selection, the jury had been instructed that the prosecutor's comments were not evidence.

The Defendant argued that although the voluntary manslaughter conviction had not been introduced as evidence, the Defendant had been prejudiced during jury selection because the conviction had "been thrown around . . . left and right." The Defendant asserted that reference to the voluntary manslaughter conviction was inadmissible propensity evidence. The court stated, "We've already talked about that, that cat's out of the bag. . . . [N]ow changing from reckless aggravated assault to that from voluntary manslaughter established more prejudice." Counsel responded that the Defendant needed to be tried pursuant to the original indictment that referred to "reckless aggravated assault" and that the jury did not need to hear anything about a voluntary manslaughter conviction. The Defendant argued that a curative instruction was insufficient and requested a mistrial, which the court denied. The trial court instructed the State to introduce the "reckless aggravated assault" conviction and said the court would instruct the jury that any reference to voluntary manslaughter the jury heard during voir dire was stricken from the record and that the jurors were not to consider it for any purpose.

When the trial resumed, the Defendant's aggravated assault conviction was received an exhibit. The trial court provided the following instruction to jury:

> I have a curative instruction to give you concerning some of the things that have happened that were presented here earlier today, and I'll include this instruction with your final instructions: Throughout the proceedings, you heard information regarding a prior conviction of voluntary manslaughter suffered by the defendant, Kurt Douglas Brown. The Court is striking any and all reference to this information from the record. You are not to consider it or give it any weight in your deliberation
> . . . .

During the final jury instructions, the trial court provided the same instruction again and told the jury that it was required to find beyond a reasonable doubt that the Defendant had been convicted of "reckless aggravated assault," that he possessed a firearm after having been convicted of "reckless aggravated assault," and that this felony involved the use or attempted use of force, and that the Defendant acted either intentionally, knowingly or recklessly.

The record reflects that the trial court prohibited the State from presenting evidence of the Defendant's previous voluntary manslaughter conviction to establish that he had been previously convicted of a felony. However, the jury was informed of the conviction during jury selection, and the record does not reflect the court's reasoning for permitting the prosecutor to refer to the conviction numerous times after the court had determined before the trial that the firearm charge would be based upon the previous aggravated assault conviction, not voluntary manslaughter. In any event, the trial court instructed the jury during voir dire that the prosecutor's statements were not evidence, and the court provided multiple curative instructions that any reference to the voluntary manslaughter conviction was stricken from the record and that the jurors were not to consider it as evidence during their deliberations. We conclude that the trial court provided proper curative instructions to the jury. We presume that the jury followed the court's instructions. *See State v. Reid*, 164 S.W.3d 286, 323 (Tenn. 2005); *State v. Shaw*, 37 S.W.3d 900, 904 (Tenn. 2001) (concluding that jurors are presumed to follow curative instructions). The overwhelming evidence showed that the Defendant admitted to the investigating officers that he had possessed a .45-caliber handgun and that he had been previously convicted of aggravated assault, a Class D felony. The Defendant is not entitled to relief on this basis.

## II.     Defendant's Previous Aggravated Assault Conviction

The Defendant contends that the trial court erred by determining that his previous "reckless aggravated assault" was a crime of violence pursuant to Tennessee Code

Annotated section 39-17-1301 (2014) (subsequently amended), which enhanced his firearm conviction from a Class E felony to a Class C felony. He argues that "reckless aggravated assault" is not an enumerated offense in Code section 39-17-1301. The State responds that the trial court did not err by determining that the Defendant's previous conviction was a crime of violence.

Before the trial, the trial court determined that "reckless aggravated assault" was a felony involving the use or attempted use of force, violence, or a deadly weapon pursuant to Code section 39-17-1307. The prosecutor told the trial court that the conviction involved strangulation.

Unlawful possession of a firearm by a convicted felon is defined, in relevant part, as follows:

> A person commits an offense who unlawfully possesses a firearm . . . and . . . [h]as been convicted of a felony crime of violence, an attempt to commit a felony crime of violence, or a felony involving the use of deadly weapon[.]"

T.C.A. § 39-17-1307(b)(1)(A). A "'[c]rime of violence' includes any degree of murder, voluntary manslaughter, . . . [and] aggravated assault[.]" *Id*. § 39-17-1301(3). The aggravated assault statute defines two types of criminal conduct. "A person commits aggravated assault who . . . [i]ntentionally or knowingly commits an assault . . . and the assault" results in serious bodily injury or death of another, involves the use or display of a deadly weapon, or is intended to cause bodily injury by strangulation. *Id*. § 39-13-102(a)(1)(A)(i), (ii), (iii), (iv) (2014) (subsequently amended). Likewise, "A person commits aggravated assault who . . . [r]ecklessly commits an assault as defined in § 39-13-101(a)(1)" and the assault results in serious bodily injury or death to another person or involves bodily injury and the use or display of a deadly weapon. *Id*. § 39-13-102(a)(1)(B)(i), (ii), (iii). Aggravated assault involving intentional or knowing conduct is a Class C felony, and aggravated assault involving reckless conduct is a Class D felony. *Id*. at (e)(1)(A).

We conclude that the trial court did not err by determining that aggravated assault accomplished by reckless conduct is a crime of violence. Aggravated assault is defined as a crime of violence, and aggravated assault can be accomplished with intentional, knowing, or reckless conduct. The mens rea affects the felony classification for purposes of punishment. Although the parties refer to the conviction offense as reckless aggravated assault, the conviction offense is aggravated assault, which in this case is based upon reckless conduct. Aggravated assault is a crime of violence as defined by Code section 39-17-1301(3), and the proper felony classification for the Defendant's

unlawful possession of a firearm conviction is a Class C felony.    The Defendant is not entitled to relief on this basis.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
ROBERT H. MONTGOMERY, JR., JUDGE